# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | |
|---|---|
| Gerald Cantz, : | |
| Petitioner : | |
| : | |
| v. : | No. 1321 C.D. 2017 |
| : | Submitted: February 23, 2018 |
| Workers' Compensation Appeal : | |
| Board (City of Philadelphia), : | |
| Respondent : | |

BEFORE: HONORABLE P. KEVIN BROBSON, Judge
          HONORABLE ANNE E. COVEY, Judge
          HONORABLE ELLEN CEISLER, Judge

*OPINION NOT REPORTED*

**MEMORANDUM OPINION**
**BY JUDGE BROBSON**          **FILED: August 20, 2018**

Gerald Cantz (Claimant) petitions for review of an order of the Workers' Compensation Appeal Board (Board), which affirmed the decision and order of a Workers' Compensation Judge (WCJ), thus denying Claimant's claim petition for benefits under the Workers' Compensation Act (Act).[1] We now affirm.

At issue in this matter is whether Claimant, a former firefighter, established that he developed a compensable occupational disease in the form of prostate cancer. Before reciting the particular facts surrounding this appeal, a brief review of the relevant statutory provisions and case law is helpful. Section 301(c)(2) of the Act, *as amended*, 77 P.S. § 411(2), provides that a compensable "injury"

---

[1]Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1-1041.4, 2501-2708.

includes any "occupational disease as defined in [S]ection 108 of this act." In turn, Section 108 of the Act,[2] 77 P.S. § 27.1, enumerates a number of occupational diseases. In 2011, the General Assembly enacted what is known as Act 46,[3] which, *inter alia*, added cancer to the list of occupational diseases for firefighters. This addition is found in Section 108(r) of the Act, 77 P.S. § 27.1(r), and it provides that cancer is a compensable injury when it is "caused by exposure *to a known carcinogen which is recognized as a Group 1 carcinogen by the International Agency for Research on Cancer* [(IARC)]." (Emphasis added.)

Section 301(e) of the Act,[4] 77 P.S. § 413, establishes a "presumption regarding occupational disease" that applies to any occupational disease sustained by any employee in any line of work. Section 301(e) provides:

> *If it be shown that the employe, at or immediately before the date of disability, was employed in any occupation or industry in which the occupational disease is a hazard*, it shall be presumed that the employe's occupational disease arose out of and in the course of his employment, but this presumption shall not be conclusive.

(Emphasis added.) Additionally, Section 301(f) of the Act,[5] 77 P.S. § 414, provides for a special presumption when the occupational disease is cancer and the employee is a firefighter. Section 301(f) provides:

> *Compensation pursuant to cancer suffered by a firefighter shall only be to those firefighters who have served four or more years in continuous firefighting duties, who can establish direct exposure to a carcinogen referred to in [S]ection 108(r)* relating to cancer by a firefighter and have successfully passed a physical examination prior to

---

[2] Added by the Act of October 17, 1972, P.L. 930, *as amended*.

[3] Act of July 7, 2011, P.L. 251.

[4] Added by the Act of October 17, 1972, P.L. 930.

[5] Added by the Act of July 7, 2011, P.L. 251.

asserting a claim under this subsection or prior to engaging in firefighting duties and the examination failed to reveal any evidence of the condition of cancer. The presumption of this subsection may be rebutted by substantial competent evidence that shows that the firefighter's cancer was not caused by the occupation of firefighting. Any claim made by a member of a volunteer fire company shall be based on evidence of direct exposure to a carcinogen referred to in [S]ection 108(r) as documented by reports filed pursuant to the Pennsylvania Fire Information Reporting System and provided that the member's claim is based on direct exposure to a carcinogen referred to in [S]ection 108(r). Notwithstanding the limitation under subsection (c)(2) with respect to disability or death resulting from an occupational disease having to occur within three hundred weeks after the last date of employment in an occupation or industry to which a claimant was exposed to the hazards of disease, claims filed pursuant to cancer suffered by the firefighter under [S]ection 108(r) may be made within six hundred weeks after the last date of employment in an occupation or industry to which a claimant was exposed to the hazards of disease. The presumption provided for under this subsection shall only apply to claims made within the first three hundred weeks.

(Emphasis added.)

In sum, to establish that a firefighter's cancer is an occupational disease compensable under the Act, the firefighter must show that his type of cancer is one "caused by exposure to a known carcinogen which is recognized as a Group 1 carcinogen." 77 P.S. § 27.1(r). Once a firefighter establishes that his type of cancer is an occupational disease, then he may take advantage of the statutory presumption in Section 301(f) of the Act, provided that the firefighter filed the claim within 300 weeks of his last day of employment. The presumption relieves the firefighter of the need to prove that his cancer was caused by his workplace exposure and not another cause. *See* 77 P.S. § 413. The employer may then rebut this presumption through

3

"substantial competent evidence that shows that the firefighter's cancer was not caused by the occupation of firefighting."  77 P.S. § 414.  Alternatively, the firefighter may elect to seek compensation without the aid of the statutory presumption, in which case he must establish a causal link between his occupational disease and his workplace exposure.  Section 108(n) of the Act, 77 P.S. § 27.1(n), allows for any employee to pursue compensation for any disease "causally related to [his] industry or occupation."  The instant case involves Claimant attempting to establish a compensable injury through application of the statutory presumption.

Our first occasion to interpret Section 108(r) of the Act came in *City of Philadelphia Fire Department v. Workers' Compensation Appeal Board (Sladek)*, 144 A.3d 1011 (Pa. Cmwlth. 2016) (*en banc*), *appeal granted*, 167 A.3d 707 (Pa. 2017), wherein this Court vacated the Board's award of benefits to a firefighter with malignant melanoma because the award was based upon the Board's incorrect interpretation of Section 108(r).  The Board in *Sladek* construed Section 108(r) to mean that a firefighter's cancer is presumed work-related if the firefighter was exposed to a Group 1 carcinogen at work, regardless of whether the firefighter's cancer is a type of cancer known to be caused by exposure to Group 1 carcinogens. We rejected this interpretation and instead concluded that Section 108(r) requires the firefighter to show that the Group 1 carcinogens to which he was exposed *have been shown to cause the type of cancer for which the claimant has been diagnosed*. Further, we explained that a claimant may benefit from the rebuttable presumptions found in Sections 301(e) and (f) of the Act *only after the claimant establishes that his cancer is an occupational disease under Section 108(r)*.

Similarly, in *Demchenko v. Workers' Compensation Appeal Board (City of Philadelphia)*, 149 A.3d 406 (Pa. Cmwlth. 2016), we affirmed the Board's

4

denial of benefits to a firefighter diagnosed with prostate cancer. The Board in *Demchenko* upheld a WCJ's finding that the claimant did not prove that prostate cancer was an occupational disease under Section 108(r) of the Act. This Court affirmed, reasoning that because the claimant failed to establish that prostate cancer is an occupational disease for firefighters under Section 108(r) of the Act—*i.e.*, that exposure to Group 1 carcinogens is known to cause prostate cancer—the claimant could not utilize the statutory presumption in Section 301(f) of the Act. With the foregoing in mind, we now turn to the facts of the instant appeal.

Claimant worked as a firefighter for the City of Philadelphia (Employer) from November 1977 until he retired on July 21, 2007. In December 2009, a urologist diagnosed Claimant with prostate cancer, for which Claimant later received treatment.

On April 20, 2012, Claimant filed a claim petition alleging a compensable occupational disease in the form of prostate cancer. The claim petition averred that Claimant sustained prostate cancer due to exposure to Group 1 carcinogens over the course of his career as a firefighter. In support of his claim petition, Claimant provided his own deposition testimony, in addition to providing medical reports and deposition testimony of various medical experts.

Claimant testified that he worked for Employer as a firefighter for approximately 30 years. (Reproduced Record (R.R.) at R80.) Claimant received a physical prior to beginning his employment, which apparently did not discover any form of cancer. (*Id.* at R80, R82.) Claimant stated that he was routinely exposed to diesel exhaust, smoke, soot, and hazardous materials throughout his career. (*Id.* at R80-R82.) Claimant estimated that he responded to hundreds of fires throughout his career. (*Id.* at R82.) Claimant testified that he sometimes wore his self-contained

5

breathing apparatus when fighting fires, but he stated that each fire he responded to involved direct exposure to smoke when he took off his apparatus during the end stages of the fire response. (*Id.* at R81-R82.) Claimant's last fire response occurred in 2007—the same year he retired. (*Id.* at R83.) In December 2009, a urologist diagnosed Claimant with prostate cancer. (*Id.* at R82.) Claimant underwent surgery to remove his prostate in January 2010, and he is still receiving medical treatment and supervision. (*Id.* at R83.)

In an effort to avail himself of the statutory presumption in Section 301(f) of the Act, Claimant attempted to establish that exposure to Group 1 carcinogens is known to cause prostate cancer by submitting deposition testimony and medical reports from multiple physicians. First, Claimant submitted a medical report from Virginia Weaver, M.D., M.P.H. (Dr. Weaver), a physician who is board certified in internal medicine and occupational medicine. Dr. Weaver opined that firefighters are exposed to Group 1 carcinogens in the course of their work, many of which are found in smoke from burning structures, including buildings and automobiles. (*Id.* at R48.) She further stated that although firefighters use protective equipment, the degree of protection is nevertheless incomplete; firefighters routinely observe black soot on their skin and in nasal discharges after major fires, and, until recently, most firefighters routinely removed their respiratory protection during the overhaul process. (*Id.*) Dr. Weaver, however, did not provide any specific testimony relating to the causal relationship between a firefighter's exposure to certain Group 1 carcinogens and the development of prostate cancer.

Claimant next submitted the deposition testimony of Barry L. Singer, M.D. (Dr. Singer), who is board certified in internal medicine, hematology, and medical oncology. Dr. Singer stated that, in 2008, Claimant's counsel contacted him

6

to evaluate the cancer history of a number of firefighters to determine whether their cancer was work-related and, thus, compensable under the Act. Dr. Singer estimated that, since 2008, he has reviewed 40 to 50 cases on referral from Claimant's counsel. Approximately 25 of those referrals involved firefighters with prostate cancer.

Here, Dr. Singer opined regarding the specific Group 1 carcinogens associated with firefighting and their potential relationship to the onset of prostate cancer. Specifically, Dr. Singer testified that cadmium, arsenic, and benzoapyrene are all Group 1 carcinogens to which firefighters are exposed in the performance of their duties. (*Id.* at R917.) Dr. Singer opined that, to a reasonable degree of medical certainty, the aforementioned Group 1 carcinogens are related to prostate cancer. (*Id.* at R920.)

In opposition, Employer submitted the deposition testimony of Tee Guidotti, M.D., M.P.H. (Dr. Guidotti), who is board certified in internal medicine, pulmonary medicine, and occupational disease, in addition to being trained in toxicology and epidemiology. Dr. Guidotti opined that, as a matter of general causation, there is insufficient evidence from which to conclude that prostate cancer is caused by exposure to Group 1 carcinogens related to firefighting. Dr. Guidotti further opined that prostate cancer is not commonly attributable to occupational exposures, as the primary risk factors for prostate cancer are age, followed by family history. Dr. Guidotti asserted that prostate cancer is the leading type of cancer among men and opined that prostate cancer is not attributable to occupational exposures. Specifically, he stated that prostate cancer is "much more a disease of aging than it is of external influences." (*Id.* at R1449.)

In response to Employer's evidence, Claimant presented a 2012 report composed by Grace LeMasters, Ph.D., M.S. (Dr. LeMasters), a professor of

7

epidemiology and biostatistics in the Department of Environmental Health at the University of Cincinnati College of Medicine. The report essentially challenges Dr. Guidotti's overall conclusions regarding firefighter exposures to Group 1 carcinogens and the onset of prostate cancer. To the contrary of Dr. Guidotti's testimony, Dr. LeMasters opined that prostate cancer is related to fire service exposures, and that there is a "biologic plausibility of the association between firefighter exposures and . . . prostate cancer." (*Id.* at R34.)

By decision and order circulated on November 6, 2014, the WCJ dismissed the claim petition. In so doing, the WCJ concluded that Claimant failed to provide Employer timely notice of injury. Claimant appealed this decision. By opinion and order dated August 21, 2015, the Board reversed. The Board concluded that Claimant's claim petition was timely, and the Board remanded the matter to the WCJ for a determination on the merits.

On remand, the WCJ again dismissed the claim petition. This time, the WCJ concluded that Claimant failed to establish a causal link between prostate cancer and exposure to Group 1 carcinogens related to firefighting. The WCJ found Dr. Guidotti's medical opinion more credible than that of Dr. Singer on the issue of causation. Claimant again appealed. By opinion and order dated August 29, 2017, the Board affirmed. In affirming, the Board reasoned:

> The onus was on Claimant in this matter to establish entitlement to relief. Section 108(r) [of the Act] requires a claimant to establish that the cancer contracted is a type of cancer caused by exposure to the Group 1 carcinogen to which the claimant was exposed in the workplace. *A claimant seeking compensation for cancer under Section 108(r) must establish that his disease is a type of cancer caused by exposure to a carcinogen recognized as a Group 1 carcinogen.*

8

Here . . . Claimant did not demonstrate that his prostate cancer is an occupational disease for firefighters under Section 108(r) of the Act. As discussed, the WCJ, as factfinder, rejected the testimony of Dr. Singer. The WCJ provided reasons for rejecting Dr. Singer's opinions that are consistent with the evidence of record. We reiterate that rendering credibility determinations is the quintessential function of the fact[]finder. While Claimant contends that [Employer's] evidence was not sufficient to deny his claim, the onus was on him, not [Employer], to establish entitlement to relief.

(Board Op. dated August 27, 2017, at 12-13) (internal citations omitted) (emphasis added). Claimant then petitioned this Court for review.[6]

Claimant argues that the Board erred as a matter of law in affirming the WCJ's decision. Specifically, Claimant argues that the Board failed to apply the statutory presumption found in Section 301(f) of the Act. Claimant avers that the record establishes that prostate cancer is a type of cancer caused by Group 1 carcinogens, as required by Section 108(r) of the Act. Claimant, therefore, argues that the Board should have applied the presumption and awarded benefits, as Claimant avers that Employer failed to rebut the presumption of compensability.

Claimant's argument here is nearly identical to that made in *Hutz v. Workers' Compensation Appeal Board (City of Philadelphia)*, 147 A.3d 35 (Pa. Cmwlth. 2016), wherein we affirmed the denial of benefits to a claimant due to his failure to establish that exposure to Group 1 carcinogens is known to cause prostate cancer. In *Hutz*, the WCJ found that the claimant's expert testimony failed to credibly establish that exposures to Group 1 carcinogens caused prostate cancer,

---

[6] Our review is limited to determining whether the WCJ's findings of fact were supported by substantial evidence, whether an error of law was committed, or whether constitutional rights were violated. *Phoenixville Hosp. v. Workers' Comp. Appeal Bd. (Shoap)*, 81 A.3d 830, 838 (Pa. 2013).

9

as the WCJ found the employer's expert testimony more credible. On appeal to this Court, the claimant argued that he satisfied his necessary burden to avail himself of the presumption found in Section 301(f) of the Act. We disagreed, noting that the claimant was essentially attempting to challenge the WCJ's credibility determinations, and such a challenge is beyond this Court's scope of review. Specifically, we explained:

> In workers' compensation cases, the WCJ is the ultimate fact-finder and has exclusive province over questions of credibility and evidentiary weight. The WCJ may accept the testimony of any witness, including a medical witness, in whole or in part. We are bound by the WCJ's credibility determinations.
>
> Moreover, it is irrelevant whether the record contains evidence supporting findings other than those made by the WCJ; *the crucial inquiry is whether the evidence supports the findings actually made*. Therefore, we must examine the entire record to see if it contains evidence a reasonable person might find sufficient to support the WCJ's findings. *If the record contains such evidence, the findings must be upheld, even though the record may contain conflicting evidence*. Additionally, we must view the evidence in the light most favorable to the prevailing party and give it the benefit of all inferences reasonably deduced from the evidence.

*Hutz*, 147 A.3d at 54 (internal citations omitted) (emphasis added).

Here, just as in *Hutz*, Claimant is arguing that the WCJ *should have found* that exposure to Group 1 carcinogens is known to cause prostate cancer given the record evidence. We disagree. The WCJ concluded, and the Board affirmed, that Claimant failed to meet his burden of proving that prostate cancer is causally related to exposure to Group 1 carcinogens. In so concluding, the WCJ made the following relevant findings:

> 9. Additionally, this [WCJ] does not find Dr. Singer's causation opinion linking Claimant's prostrate [sic]

cancer to his work duties credible. Dr. Singer is admittedly not an expert in urology, occupational medicine, toxicology[,] or epidemiology. He is not engaged in primary cancer research and has never published a paper on the etiology of cancer or its effect upon firefighters. By comparison, Dr. Guidotti is certified by the American Board of Occupational Medicine, has a degree in toxicology, has expertise in epidemiology[,] and has performed primary research studies on firefighters and cancer. Additionally, Dr. Singer is not Claimant's treating physician. For these reasons, Dr. Guidotti's opinion carries greater weight.

10. Dr. Guidotti credibly explained why [Dr.] LeMasters' study relied upon by Dr. Singer was insignificant and why. Additionally, the IARC (*i.e.* [t]he agency relied upon in Act 46 of 2011 to identify known carcinogens) itself does not recognize an "association" with firefighting and prostate cancer. [This WCJ] deems credible Dr. Guidotti's opinion that prostate cancer is different from other cancers since a large percentage of the male population is eventually diagnosed with this condition no matter what their occupation. As such, "it is much more a disease of aging than it is of external influences[.]"

(WCJ Decision dated August 16, 2016, Findings of Fact 9-10) (internal citation omitted).

After review, we conclude that the WCJ's findings are amply supported by the record. While Claimant may believe that certain evidence, if accepted, supports a finding in his favor, that is not our standard of review. *Hutz*, 147 A.3d at 54.

Accordingly, we affirm the Board's order.

11

_____
P. KEVIN BROBSON, Judge


Judge Fizzano Cannon did not participate in the decision of this case.

**IN THE COMMONWEALTH COURT OF PENNSYLVANIA**

Gerald Cantz,                                     :
                        Petitioner      :
                                   :
          v.                                          :      No. 1321 C.D. 2017
                                   :
Workers' Compensation Appeal            :
Board (City of Philadelphia),                :
                        Respondent    :

# **O R D E R**

AND NOW, this 20th day of August, 2018, the order of the Workers' Compensation Appeal Board is AFFIRMED.

 

 

 

                                                                          _____

                                                             P. KEVIN BROBSON, Judge